**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT A. BLYTHE,

      Petitioner-Appellant,

v.

BRENT FATKIN, Warden;
THE ATTORNEY GENERAL OF
THE STATE OF OKLAHOMA,

      Respondents-Appellees.

No. 02-6097
(D.C. No. 00-CV-2103-F)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Robert A. Blythe appeals the district court's denial of his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. We affirm the district court's denial of relief on petitioner's claim that the admission of inculpatory remarks made to a city polygraph examiner deprived him of his Fifth and Sixth Amendment rights, and deny a certificate of appealability on petitioner's remaining issues.

Petitioner is currently serving consecutive sentences resulting from his Oklahoma state convictions for first degree rape on a child under the age of fourteen, lewd molestation of a child under the age of sixteen, and forcible oral sodomy on a child under the age of sixteen. The convictions arose out of his stepdaughter's allegations that petitioner sexually molested her on multiple occasions when she was eleven years old.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals, raising the following issues: (1) the statute of limitations barred prosecution for lewd molestation and sodomy; (2) the prosecution or jury should have been required to elect particular incidents of lewd molestation and sodomy; (3) the evidence was insufficient to support his convictions; (4) his Fifth, Sixth, and Fourteenth Amendment rights were violated by admitting inculpatory statements made during an interrogation without counsel; (5) his Fifth, Sixth, and Fourteenth Amendment rights were denied by denying the discovery and

admission of agency records on the victim and by prohibiting petitioner from recalling the victim as a witness; (6) the prosecution's closing statement amounted to prosecutorial misconduct; (7) the alleged errors together violated his right to a fair trial; and (8) he was deprived of the effective assistance of counsel. In August 1999, the state appellate court affirmed petitioner's convictions, and in September 1999, the court denied his petition for rehearing.

Petitioner brought this habeas petition in the federal district court, raising the same eight issues. The magistrate judge to whom the case was referred recommended denying habeas relief on the following grounds: (1) petitioner was prosecuted within the period allowed under state law and he did not show a constitutional violation based on undue prejudice or intentional delay; (2) petitioner had no federal constitutional right to an election of offenses, and the state court's interpretation of its statute and constitutional provisions did not violate due process; (3) the evidence was sufficient to allow a rational trier of fact to find, beyond a reasonable doubt, the essential elements of the crimes for which petitioner was convicted; (4) petitioner's Sixth Amendment right to counsel was not violated by the pre-polygraph questioning because he had not been charged with a crime, and his Fifth Amendment rights were not violated because he voluntarily consented to the polygraph, waiving his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); (5) petitioner's constitutional rights were not

violated by the exclusion of evidence because there was no showing that any agency records were withheld or ruled inadmissible, and the trial court's refusal to recall the victim for inquiry into a collateral matter did not make the trial fundamentally unfair; (6) although the state court held that several of the prosecution's remarks were improper, the remarks did not deprive petitioner of due process when viewed in the context of the entire trial, the jury instructions, and the strong evidence of guilt; (7) because petitioner's individual claims of constitutional error failed, there was no cumulative error; and (8) petitioner did not show that his attorney was ineffective because counsel's alleged errors were strategic decisions made in the exercise of reasonable professional judgment, with no showing of prejudice. The district court adopted the magistrate judge's recommendation and denied relief. Petitioner appeals the resolution of all eight issues.

Before we may review his claims, petitioner must obtain a certificate of appealability as to each of his issues by making a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met by demonstrating that his issues are debatable among jurists, subject to a different resolution on appeal, or deserve further proceedings. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). On July 24, 2002, we granted a certificate of appealability on the issue of whether petitioner was deprived of due process or the

-4-

right to counsel when he was interrogated by a polygraph examiner outside the presence of counsel, in light of an agreement by the investigating detective that she would not question petitioner after his polygraph examination without counsel.

The undisputed facts are as follows. In March 1997, Detective Campbell asked to meet with petitioner to discuss the victim's allegations of sexual molestation. Petitioner brought his attorney to the meeting. The parties agreed that petitioner would return in a few days to take a polygraph examination. Aplt. App. at 308. To avoid skewing the results, the parties agreed that neither counsel nor the detective would be present at the polygraph exam. *Id.* at 308-09. Detective Campbell agreed that she would not interview petitioner after the exam unless counsel was present. *Id.*

On March 13, 1997, petitioner returned to the police department. Detective Campbell escorted petitioner to the polygraph examiner's office and explained the allegations that had been made against petitioner. After the detective left the room, the polygraph examiner advised petitioner of his *Miranda* rights and obtained a written waiver. *Id.* at 304-05. The examiner went through a personal history questionnaire with petitioner and then began discussing the allegations which would be the subject of the polygraph exam. According to the examiner, in response to a question whether there was anything that could bother petitioner

about the allegations, such as contact with the victim that went beyond normal horseplay,

> [petitioner] related to [the examiner] that [the victim] was around twelve years of age and that she would sometimes wear a short T-shirt with nothing else on. And he said he would sometimes below [sic] on her bare stomach. He stated it was possible and probable that on occasion his lips could have touched her bare vagina.
>
> He also stated it was possible and probable and [sic] occasion his tongue at the same time could have penetrated her vagina. He stated that sometimes around this same age period [the victim] would jump in bed with him wearing the same type of T-shirt, and they would wrestle around and that it was possible and probable that his penis could have touched her bare vagina.

*Id.* at 317.

At this point the examiner determined that he could not give petitioner the polygraph test because petitioner had admitted skin-to-skin contact and thus no suitable questions could be framed. *Id.* at 310-11. The examiner continued to question petitioner and then called Detective Campbell in to speak with petitioner. *Id.* The examiner led petitioner through his previous statements before leaving petitioner with the detective. *Id.* at 311. Counsel was not present at this time. Although petitioner was permitted to leave the police station, he was arrested and charged several days later.

Petitioner filed a motion to suppress the statements made to the polygraph examiner and to Detective Campbell. The state court conducted a hearing on the motion during trial. Because Detective Campbell was not available to testify at

-6-

the trial, the court simply accepted that the agreement existed and suppressed her testimony. *Id.* at 313. The court also ensured that the polygraph examiner's testimony related only to statements made to him before he called Detective Campbell. *Id.* at 310-12. Ruling that the examiner's questions to petitioner were part of "a standard pretest interview" within the scope of petitioner's waiver of his *Miranda* rights, the court allowed the examiner to testify. *Id.* at 313-14. The Oklahoma Court of Criminal Appeals agreed, holding that "[petitioner's] statement was voluntary and properly admitted as part of the agreed-to polygraph examination." *Id.* at 28.

Petitioner argues that allowing the examiner's testimony about statements he made without counsel violated his federal constitutional rights. The habeas statute dictates the nature and extent of our review of petitioner's convictions. *See* 28 U.S.C. § 2254(d). Where, as here, the state court has decided petitioner's claims on the merits, we may grant habeas relief only if the state adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding," § 2254(d)(2).

Petitioner first argues that his Sixth Amendment right to counsel was violated when he was questioned by the polygraph examiner without his attorney being present. Petitioner, however, had not yet been charged with a crime. The Sixth Amendment right to counsel does not attach until "'the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *United States v. Gouveia*, 467 U.S. 180, 188 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Thus petitioner was not deprived of his Sixth Amendment rights, and the state court's rejection of this argument was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner argues next that allowing the examiner to question him before administering the polygraph violated his Fifth Amendment right to counsel and his right against self-incrimination. The Supreme Court has declared that "an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). Further, once an accused has invoked this right, the police may not initiate further interrogation without counsel. *Id.* at 484-85. The accused may waive his previously invoked right to counsel, however, particularly if he "initiates" the conversation. *Id.* at 485-86 & n.9.

Here, petitioner contends that he invoked his right to counsel when he first met with Detective Campbell, and therefore the polygraph examiner violated his Fifth Amendment rights by interrogating him about the sexual molestation charges. This challenge may be answered in two ways. First, because it is undisputed that petitioner was free to come and go, he was not "in custody," and thus the prophylactic Fifth Amendment cases such as *Edwards* do not apply. *See id.* at 484-85 (deciding only that its protections are available for an accused subjected to "custodial interrogation"); *California v. Beheler*, 463 U.S. 1121, 1121-22, 1125 & n.3 (1983) (holding uncharged suspect who voluntarily came to the police station for interview and then was allowed to leave was not "in custody" so as to require *Miranda* protections).

Second, even if *Edwards* applies, it is clear that petitioner "initiated" further dialogue with the police when "[he] and his counsel agreed that [he] should take the polygraph examination, and [he] appeared voluntarily and stated that he did not want counsel present during the interrogation." *Wyrick v. Fields*, 459 U.S. 42, 46 (1982). The only question is whether petitioner's waiver of his Fifth Amendment rights to counsel and to remain silent was valid, that is, whether it was "knowing and intelligent . . . under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue." *Id.* at 46 (quotation omitted).

Petitioner clearly and unequivocally waived his Fifth Amendment rights for purposes of the polygraph examination. Further, he does not dispute the state court's finding that the pre-test interview was a "standard" part of the polygraph examination. Although petitioner was not attached to the polygraph machine when he made his statements, this does not make his waiver involuntary. *See id.* at 47-49 & n.\* (holding that lack of a physical connection to polygraph equipment did not affect suspect's knowledge of his rights or voluntariness of his waiver, especially when same question could have been asked during the polygraph exam and answer would have been admissible as evidence). Because petitioner has not shown that his waiver was invalid, the state court's decision that admission of the polygraph examiner's testimony was constitutionally sound was not contrary to or an unreasonable application of clearly established federal law.[1]

Finally, petitioner seeks a certificate of appealability on his remaining issues. After carefully reviewing the parties' briefs and the record, we conclude, for the reasons stated by the magistrate judge and adopted by the district court, that petitioner has failed to make a substantial showing of the denial of

---

[1] Contrary to petitioner's argument, the Supreme Court's decision in *Minnick v. Mississippi*, 498 U.S. 146 (1990) does not affect this case. *Minnick* involved a custodial interrogation initiated by police against the defendant's will. *Id.* at 147-49. The decision relied heavily on the coerciveness of custody in assessing whether the defendant's Fifth Amendment rights were violated. *Id.* at 150-54. In contrast, here we are faced with a consensual, noncustodial interrogation initiated by petitioner.

a constitutional right. *See* 28 U.S.C. § 2253(c)(2). We therefore deny his application for a certificate of appealability on his remaining issues, and dismiss the appeal as to those issues.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

                                        Entered for the Court


                                        Michael R. Murphy
                                        Circuit Judge